IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **KELLIE F.**,[1]<br><br>       Plaintiff,<br><br>v.<br><br>**ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION**,<br><br>       Defendant. | Case No. 3:24-cv-00333-IM<br><br>**OPINION AND ORDER** |

H. Peter Evans, Evans & Evans, PC, 222 NE Park Plaza Drive, Suite 113, Vancouver, WA 98684. Attorney for Plaintiff.

Kevin Danielson, Assistant U.S. Attorney, and William Narus, Acting U.S. Attorney, 1000 SW Third Avenue, Suite 600, Portland, Oregon 97204; Gabriel Bono and Michael J. Mullen, Special Assistant U.S. Attorneys, Office of the General Counsel, Social Security Administration, 6401 Security Boulevard, Baltimore, MD 21235. Attorneys for Defendant.

**IMMERGUT, District Judge**

    Plaintiff Kellie F. seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final

decision of the Commissioner of Social Security denying her benefits. Given that only a "de

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the nongovernmental party in this case.

PAGE 1 – OPINION AND ORDER

minimis showing" is required at this stage, *Glanden v. Kijakazi*, 86 F.4th 838, 843 (9th Cir. 2023), the Commissioner's decision is REVERSED and the case is REMANDED for step three analysis, as detailed below.

## PROCEDURAL BACKGROUND

On March 17, 2021, Plaintiff applied for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, alleging disability beginning September 1, 2015. AR 322–27. The Social Security Administration ("SSA") denied her application initially and upon reconsideration. AR 86, 98. Plaintiff appeared and testified at a hearing held on April 21, 2022, before Administrative Law Judge ("ALJ") Jo Hoenniger. AR 18. Supplemental hearings were then held on May 12, 2022, May 31, 2022, and December 28, 2022. *Id.* On January 9, 2023, the ALJ issued a decision finding that Plaintiff had not been under a disability from the alleged onset date through Plaintiff's date last insured ("DLI"). AR 15–35. Plaintiff requested review of the decision, and the Appeals Council denied review. AR 5–10. This appeal followed.

## THE ALJ'S FINDINGS

As a preliminary matter, the ALJ determined that Plaintiff met the insured status requirements through December 31, 2018. AR 20. At step one of the sequential evaluation process, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from her alleged onset date of September 1, 2015, through her DLI of December 31, 2018. AR 21. At the second step, the ALJ found that Plaintiff had the following medically determinable impairments: asthma, neck cyst, hypothyroidism, history of follicular cancer, left adrenal mass, pseudotumor cerebri, hypertension, fibromyalgia, obesity, and PTSD. *Id.* The ALJ then concluded that Plaintiff had not established that any of these impairments or combination of impairments was severe on or before December 31, 2018. *Id.* The ALJ accordingly determined that Plaintiff was not disabled at any time from the alleged onset date through her DLI. AR 29.

PAGE 2 – OPINION AND ORDER

Because the ALJ found that Plaintiff was not disabled at the second step, the ALJ did not reach the third, fourth, and fifth steps of the sequential evaluation.

## STANDARD OF REVIEW

The district court must uphold the Commissioner's decision if it is supported by substantial evidence and based on the proper legal standards. 42 U.S.C. § 405(g); *see also Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla," and means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1150 (2019) (internal quotation marks omitted). When "evidence is susceptible of more than one rational interpretation," the ALJ's conclusion "must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Errors in the ALJ's decision do not warrant reversal if they are harmless. *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006).

## DISCUSSION

Plaintiff argues that the ALJ erred at step two by concluding that Plaintiff's medical impairments were not severe. Plaintiff's Opening Brief, ECF 10 at 3. Plaintiff also asserts that the ALJ improperly rejected the opinions of Plaintiff's medical providers and the lay witness testimony of Plaintiff's wife. *Id.* at 3, 15, 25. This Court agrees that the ALJ erred in rejecting some of this testimony. Although the evidence of severe impairment during the period of disability may not be particularly strong, at this stage, this Court cannot conclude that "the ALJ had substantial evidence to find that the medical evidence *clearly established* that the claimant did not have a medically severe impairment or combination of impairments." *Glanden v. Kijakazi*, 86 F.4th 838, 844 (9th Cir. 2023) (emphasis added) (quoting *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005)). This Court finds that remand, not reversal for payment of benefits, is the appropriate remedy, and thus remands for the step three analysis.

PAGE 3 – OPINION AND ORDER

**A. The ALJ Improperly Rejected Certain Evidence**

In finding Plaintiff not disabled, the ALJ rejected the opinions of Plaintiff's medical experts and the testimony of Plaintiff's wife. This Court first determines whether the ALJ erred in rejecting some of this evidence, then decides whether the ALJ's step two findings were supported by substantial evidence.

**1. Medical Evidence**

Plaintiff argues the ALJ improperly evaluated the opinions of Dr. Samantha Abrams, Ph.D., Crystal J. Mattox, LMFT, Emily M. Ludwig, LCSW, and Dr. Leslie Carter, Ph.D. Plaintiff's Opening Brief, ECF 10 at 16. This Court finds that the ALJ improperly weighed the medical opinion evidence of these experts because she failed to sufficiently address the supportability or consistency, or both, of these experts' opinions.

For disability claims filed on or after March 27, 2017, the ALJ no longer "weighs" medical opinions but instead determines which are most "persuasive." 20 C.F.R. § 404.1520c(a). The 2017 regulations eliminated the hierarchy of medical opinions and state that the agency does not defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the 2017 regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 404.1520c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support their opinions. *Id.* § 404.1520c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. *Id.* § 404.1520c(c)(2).

PAGE 4 – OPINION AND ORDER

An ALJ may also consider a medical source's relationship with the claimant by looking at factors such as the length, purpose, or extent of the treatment relationship, the frequency of the claimant's examinations, and whether there is an examining relationship. *Id.* § 404.1520c(c)(3). An ALJ is not, however, required to explain how she considered those secondary medical factors unless she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. *Id.* § 404.1520c(b)(2)-(3). The regulations further require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." *Id.* § 404.1520c(b).

### a. Samantha Abrams, Ph.D.

Dr. Abrams is a licensed clinical psychologist who treated Plaintiff from 2009 to 2011. AR 1386. She provided a statement in connection with Plaintiff's disability claim in November 2021. AR 1387. Dr. Abrams stated that Plaintiff "presented with clinically significant symptoms including nightmares, intrusive images/memories, emotional avoidance, depressed mood, severe sleep disruption, agitation/irritability, and difficulty concentrating and following through with daily tasks and responsibilities." AR 1386. She also stated that Plaintiff's "trauma history is the most severe, dehumanizing, and physically brutal of all the experiences patients have shared with me over the [last 20] years." *Id.*

As to supportability, the ALJ noted that Dr. Abrams had not examined Plaintiff during the relevant period and treated Plaintiff before the relevant period, and did not address Plaintiff's functional limitations. AR. 27. This was a reasonable conclusion given that Dr. Abrams' treatment of Plaintiff terminated around four years before Plaintiff's alleged onset date. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) ("Medical opinions that predate the alleged onset of disability are of limited relevance.").

PAGE 5 – OPINION AND ORDER

However, the ALJ erred in finding that Dr. Abrams' opinion was "inconsistent with the medical evidence during the relevant period." AR 27. This conclusion was based on record notes showing Plaintiff's "normal alertness and orientation, linear and goal-oriented thought process, lack of memory loss or language errors on exam, often normal mood and affect, normal eye contact, fairly good judgment, calm, cooperative, and pleasant behavior, and good grooming." *Id.* (citations omitted).

Plaintiff's alertness, thought process, memory and language abilities, and eye contact do not contradict Dr. Abrams's observations of Plaintiff's severe PTSD. *See Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014) (concluding ALJ erred in finding the claimant's "good eye contact, organized and logical thought content, and focused attention" contradicted his "reported symptoms of depression and social anxiety"). As for Plaintiff's mood, affect, judgment, behavior, and grooming, the ALJ referred to four primary care appointments where the records stated: "Attitude: Not abnormal" and "Affect: Normal," which appear to be standard notations. AR 1224, 1234, 1243, 1262. There is no record of any psychological assessment at any of these appointments; at three of them, Plaintiff's PTSD wass listed as an "active problem." AR 1221, 1231, 1240. The ALJ also referenced an endocrinology appointment where the record stated that Plaintiff was "alert and oriented" and had "normal mood and affect," AR 1278, a dermatology appointment that stated she had a "normal mood and affect" and "[p]leasant and cooperative mood," AR 1295, and a rheumatology appointment where the record stated: "[p]leasant, cooperative, no acute distress. Appropriate mood and affect." AR 1310.

It was legal error for the ALJ to cherry-pick brief, standard notations on mood, affect, and demeanor from Plaintiff's medical record. The purpose of these appointments was to address Plaintiff's physical health issues, and no psychological assessment or screening was performed.

PAGE 6 – OPINION AND ORDER

*See Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001) (holding ALJ committed legal error in rejecting medical evidence based on selective reliance on treatment notes). "That a person who suffers from severe panic attacks, anxiety, and depression" or PTSD "makes some improvement," or presents as "normal" at a dermatology appointment "does not mean that the person's impairments no longer seriously affect her ability to function in a workplace." *Id.* As the Ninth Circuit has explained, "treatment records must be viewed in light of the overall diagnostic record." *Ghanim*, 763 F.3d at 1164. Viewing Plaintiff's treatment records in light of the overall medical record, the ALJ's finding that Dr Abrams's opinion lacked consistency was not supported by substantial evidence.

### b. Crystal Mattox, LMFT

Crystal Mattox, LMFT, began seeing Plaintiff in 2019, after her date last insured. AR 1388. In January 2022, Ms. Mattox provided a medical source statement in support of Plaintiff's disability application. AR 1388–93. Ms. Mattox states that she sees Plaintiff two to three times per week and that Plaintiff is diagnosed with complex PTSD, panic disorder, agoraphobia, and major depressive disorder. AR 1388. Ms. Mattox states that Plaintiff "struggles with profound impairments related to dissociation, paranoia, flashbacks, agitation, mania & constant high levels of anxiety" and "does not socialize & leave the home." AR 1388–89. In May 2022, Ms. Mattox wrote a letter stating that Plaintiff suffers from a "very severe case of complex PTSD" and that this was evident from their first session in July 2019. AR 1596.

As to supportability, the ALJ found that Ms. Mattox's opinions were "not supported by observation of the claimant during the relevant period" and did "not address the claimant's functional limitations during the relevant time period." AR 27. Although the timing of an opinion in relation to the date last insured is a permissible consideration, it cannot be the sole basis for rejection of an opinion issued after the alleged period of disability. *Smith v. Bowen*, 849 F.2d

PAGE 7 – OPINION AND ORDER

1222, 1225 (9th Cir. 1988). The Ninth Circuit has held that "reports containing observations made after the period for disability are relevant to assess the claimant's disability." *Id.* This is because "medical reports are inevitably rendered retrospectively." *Id.* The ALJ therefore erred in discounting Ms. Mattox's opinions based on the timing of her observations. These opinions were contemporaneous with Ms. Mattox's treatment of Plaintiff and relate to treatment for conditions that existed during the period of disability.

As to consistency, the ALJ found that Ms. Mattox's opinions were "inconsistent with the medical evidence during the relevant period." AR 27. This finding is erroneous for the reasons given above as to Dr. Abrams. Therefore, the ALJ's decision to disregard Ms. Mattox's opinion was not supported by substantial evidence.

### c. Emily Ludwig, LCSW

Emily Ludwig, LCSW, met with Plaintiff twice in October 2016, during the period of disability. AR 1588. During the first meeting, Ms. Ludwig conducted a psychological intake and diagnosed Plaintiff with PTSD and anxiety. AR 742–47. Ms. Ludwig began working with Plaintiff two to four times per month in August 2019, after the period of disability. AR 1588. In April 2022, Ms. Ludwig provided a medical source statement in support of Plaintiff's disability application. AR 1588–93. Ms. Ludwig states that Plaintiff has PTSD and major depressive disorder. AR 1588. She also stated that Plaintiff "experiences dissociation regularly" and is "unable to leave [the] home at this time." AR 1590.

As to supportability, the ALJ rejected Ms. Ludwig's opinion because "Ms. Ludwig saw the claimant for only two sessions during the relevant period, and did not see the claimant again until well after the end of the relevant period." AR 28. The ALJ was entitled to consider the length of treatment and frequency of examination in assessing Ms. Ludwig's opinion. 20 C.F.R. §§ 404.1520c(c)(3)(i), 416.920c(c)(3)(i). However, as to supportability, the ALJ found Ms.

PAGE 8 – OPINION AND ORDER

Ludwig's opinion to be "inconsistent with the medical evidence during the relevant period." AR 28. This finding was legally insufficient for the reasons given above. Therefore, the ALJ's decision to disregard Ms. Ludwig's opinion was not supported by substantial evidence.

### d. Leslie Carter, Ph.D.

Dr. Leslie Carter met with Plaintiff in June and July of 2022 to conduct a psychological evaluation. AR 1598. Dr. Carter reviewed Plaintiff's treatment records, administered several psychological tests, and interviewed Plaintiff's wife. AR 1599–605. Dr. Carter issued her opinion in August 2022, diagnosing Plaintiff with severe complex PTSD, panic disorder, agoraphobia, and severe major depressive disorder. AR 1605. Dr. Carter further opined that Plaintiff "was markedly disabled from employment continually between 2016 and 2019." AR 1607. Dr. Carter stated that Plaintiff is extremely limited in her ability to appropriately interact with others, that she is easily triggered by the presence of men, she has frequent panic attacks and dissociative episodes when in public, she is unable to leave her home without a support person, she could not tolerate a regular workday without missing three days a week of work, and her work pace is expected to be 30% slower than normal due to anxiety. *Id.*

As to supportability, the ALJ dismissed Dr. Carter's opinion because it "is not supported by an examination of the claimant during the relevant time period, and Dr. Carter did not evaluate the claimant until well after the relevant time period." AR 28. As stated above, an opinion issued after the alleged period of disability cannot be rejected solely based on its timing. *Smith*, 849 F.2d at 1225. The ALJ's determination that Dr. Carter's opinion lacks supportability was legally insufficient.

The ALJ was correct to find that Dr. Carter's opinion was "not consistent with the record" given "the opinion of Dr. Chukwuemeka, as Dr. Chukwuemeka has vastly more training

and experience in assessing and treating PTSD than has Dr. Carter." AR 28. Substantial evidence existed as to the inconsistency of Dr. Carter's opinion.

### 2. Lay Witness Testimony

Plaintiff argues that the ALJ improperly rejected her wife's lay witness testimony. Plaintiff's Opening Brief, ECF 10 at 25.

Plaintiff's wife, Amy, was interviewed by Dr. Carter in connection with Plaintiff's consultative examination. AR 1602–03. Amy stated that, in 2016, Plaintiff "struggled with PTSD symptoms including problems calming her mind to sleep at night, dissociative thinking, distractibility, flashbacks, and [losing] track of time." AR 1602. Amy stated that, in 2018, Plaintiff did not leave the house without Amy. *Id.* Amy further stated that, in 2018 and 2019, Plaintiff drove "very part time" for Uber and Lyft, but the "stress of driving had exacerbated her PTSD and she emotionally crashed" in 2019. AR 1602–03. Amy recalled that Plaintiff "locked herself in her room, slept a lot, and stopped bathing and doing selfcare," and would still not leave the house without Amy. AR 1603.

Under the new guidelines, an ALJ is "not required to articulate how [he or she] considered evidence from nonmedical sources." 20 C.F.R. § 404.1520c(d) (effective Mar. 27, 2017). Nevertheless, the ALJ found that Amy "described severe symptoms that are simply not corroborated by the medical evidence for the relevant period." AR 29. No further articulation was required. Therefore, the ALJ did not err in rejecting the testimony of Plaintiff's wife.

### B. The ALJ's Findings Are Not Supported by Substantial Evidence

At step two, the claimant has the burden of showing that she has a "severe" impairment or combination of impairments that has lasted or can be expected to last for a continuous period of at least twelve months. *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005); 20 C.F.R. § 416.912(a). An impairment is severe if it "significantly limits" the claimant's "physical or

PAGE 10 – OPINION AND ORDER

mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Basic work activities mean "the abilities and aptitudes necessary to do most jobs," such as:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) Capacities for seeing, hearing, and speaking; (3) Understanding, carrying out, and remembering simple instructions; (4) Use of judgment;
> (5) Responding appropriately to supervision, co-workers and usual work situations; and (6) Dealing with changes in a routine work setting.

*Id.* § 404.1522(b). Slight abnormalities that minimally affect the ability to do basic work activities do not suffice. *Webb*, 433 F.3d at 686.

It is relatively rare for an ALJ to deny a claim at step two. *Glanden v. Kijakazi*, 86 F.4th 838, 844 (9th Cir. 2023). The Ninth Circuit has repeatedly emphasized that "claimants need only make a de minimis showing for the analysis to proceed past this step." *Id.* at 843–84; *see Webb*, 433 F.3d at 687 (describing this step as "a de minimis screening device used to dispose of groundless claims" (cleaned up)). Courts therefore ask "whether the ALJ had substantial evidence to find that the medical evidence clearly established that the claimant did not have a medically severe impairment or combination of impairments." *Glanden*, 86 F.4th at 844 (cleaned up). Denying a claim at this step "requires an unambiguous record showing only minimal limitations." *Id.*; *accord* SSR 85-28 (explaining that ALJs must exercise "great care" at step two and proceed to step three if a clear determination cannot be made).

In February 2015, Plaintiff told her doctor that she suffered from anxiety and PTSD from physical and mental abuse. AR 1308. Plaintiff's PTSD diagnosis was noted as chronic and active on April 1, 2015, AR 1209, and her provider recommended cognitive behavioral therapy. AR 1252. In May 2015, Plaintiff "complained of anxiety (PTSD) and depression." AR 1285 (emphasis omitted). That month, when establishing care with a new provider, it was noted that she has anxiety and PTSD. AR 769. In August 2016, Plaintiff told her primary care provider that

PAGE 11 – OPINION AND ORDER

she "has been struggling with severe PTSD, anxiety, and depression," AR 752 (emphasis omitted), and this provider diagnosed her with PTSD and general anxiety disorder. AR 753.

Considering this evidence and the statements of Ms. Mattox and Ms. Ludwig, there is sufficient evidence to establish that Plaintiff's claim is nonfrivolous and to require the ALJ to proceed to step three. She submitted evidence that she suffers from severe PTSD, anxiety, and agoraphobia, causing her to dissociate and making her unable to leave her home by herself. These symptoms inhibited Plaintiff's ability to do basic work activities and attend work. This is not a case where "even the claimant's doctor was hesitant to conclude that any of the claimant's symptoms and complaints were medically legitimate." *Glanden*, 86 F.4th at 845 (citation omitted).[2]

Accordingly, this Court finds that the ALJ lacked "substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments." *Glanden*, 86 F.4th at 844.

**C. Remand for Step Three Analysis**

Plaintiff requests that this Court reverse for payment of benefits or else remand. Plaintiff's Opening Brief, ECF 10 at 27. Defendant argues that, if this Court does not affirm the Commissioner's decision, then remand is the appropriate remedy. Defendant's Brief, ECF 14 at 10. This Court finds that remand is warranted. This case does not present the "rare circumstances" where further administrative proceedings would serve "no useful purpose." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014) (citations omitted). Therefore, this Court remands for the step-three analysis.

---

[2] This Court finds that there was substantial evidence to support the ALJ's finding that Plaintiff's fibromyalgia was not a severe impairment given Plaintiff's normal physical findings. AR 23–24.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled is REVERSED AND REMANDED for step three analysis.

**IT IS SO ORDERED**.

DATED this 21st day of April, 2025.

/s/ Karin J. Immergut
Karin J. Immergut
United States District Judge